UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| G & G CLOSED CIRCUIT EVENTS, LLC | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 3:14-CV-1884-PPS-MGG |
| | ) |
| JUAN C. AGUIRRE, INDIVIDUALLY | ) |
| AND D/B/A TAQUERIA LOS GALLOS; | ) |
| BEATRIZ ZARATE, INDIVIDUALLY | ) |
| AND D/B/A TAQUERIA LOS GALLOS; | ) |
| GRACIELA VALLES, INDIVIDUALLY | ) |
| AND D/B/A TAQUERIA LOS GALLOS; | ) |
| AND TAQUERIA LOS GALLOS, INC., | ) |
| AN UNKNOWN BUSINESS ENTITY, | ) |
| D/B/A TAQUERIA LOS GALLOS, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff G & G Closed Circuit Events, LLC seeks a judgment by default against defendants Juan C. Aguirre, Graciela Valles, and Taqueria Los Gallos, Inc. [DE 22.] G & G was the exclusive nationwide distributor of a pay-per-view broadcast of "Knockout Kings: Canelo Alvarez v. Josesito Lopez Championship Fight Program," televised on Saturday, September 15, 2012. [DE 1 at ¶9.] G & G filed a complaint with this court on September 11, 2014 alleging that the defendants pirated the telecast of the fight. [*Id.* at ¶12.] The Defendants failed to serve an answer or otherwise defend this lawsuit, so G & G moved for an entry of default, DE 18, and the clerk entered default pursuant to Federal Rule of Civil Procedure 55(a), DE 19. G & G now moves for default judgment and provides affidavits to support its claims for damages, costs, and attorney's fees.

[DE 22.]

## Background

According the complaint, on Saturday, September 15, 2012, the Defendants or their employees unlawfully exhibited "Knockout Kings: Canelo Alvarez v. Josesito Lopez Championship Fight Program" at Taqueria Los Gallos operating at 800 West Market Street, Logansport, Indiana. [DE 1 at ¶¶7, 9, 12.] According to the liquor license for Taqueria Los Gallos, attached as an exhibit to the motion for default judgment, Aguirre and Valles are the President and Secretary of Taqueria Los Gallos, Inc., respectively, which is an owner and/or operator of Taqueria Los Gallos. [DE 22-1 at ¶¶7, 10.] G & G had exclusive commercial nationwide television distribution rights to the program and spent money promoting and transmitting it to establishments in Indiana. [DE 1 at ¶¶9-10.] Taqueria Los Gallos did not pay for this right, showing the program for the purpose of commercial advantage or private financial gain with full knowledge that the program wasn't to be intercepted, received, or exhibited without G & G's authorization. [*Id.* ¶12.] Consequently, G & G contends that the Defendants are liable under the Federal Communications Act of 1934 (47 U.S.C. § 605), the Cable & Television Consumer Protection and Competition Act of 1992 (47 U.S.C. § 553), and a state-law claim of conversion.

## Discussion

Because the clerk entered default against the Defendants, I take G & G's factual allegations relating to liability as true. *FMC Corp. v. Varonos*, 892 F.2d 1308, 1310 (7th

Cir. 1990) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods.*, 722 F.2d 1319, 1323 (7th Cir. 1983)). If those factual allegations are sufficient to establish G & G's claims, then I may enter default judgment against the defendants. *See Black v. Lane*, 22 F.3d 1395, 1407 (7th Cir. 1994).

I will start out by noting that the complaint contains allegations against Beatriz Zarate, individually and doing business as Taqueria Los Gallos. [DE 1.] G & G, however, has failed to serve Zarate. A failure to have process issued and service made within 90 days from the filing of the lawsuit may result in dismissal of the action, without prejudice, for failure to complete process pursuant to Federal Rule of Civil Procedure 4(m). On September 30, 2015, the Clerk of Court warned G & G of the potential dismissal. [DE 12.] A year and a half later, Zarate still has not been served and has not been voluntarily dismissed. For these reasons, I now dismiss all claims against Zarate without prejudice.

Turning to Counts I and II of the complaint, 47 U.S.C. § 605, *et seq.* and 47 U.S.C. § 553, *et seq.* both provide G & G with a private right of action in a United States District Court against the Defendants for their interception of G & G's program without authorization. Whether the Defendants violated Section 605 or Section 553 depends on whether the Defendants intercepted the program from a satellite or a cable transmission. *See* 47 U.S.C. § 553(a)(1); 47 U.S.C. § 605(b). There are sufficient factual allegations in G & G's complaint, taken as true, to establish that the Defendants intercepted the program without authorization—Aguirre, Valles, and Taqueria Los

3

Gallos willfully showed the program on September 15, 2012, its broadcasting date, without G & G's authorization, DE 1 ¶12, but there is no way of knowing how the Defendants intercepted the program.

Where a defendant's default prohibits discovery on whether the broadcast was intercepted over cable or satellite, courts allow recovery under Section 605. *See Joe Hand Promotions, Inc. v. Chapman*, No. 2:15_CV-460-PPS, 2016 WL 3881121, at *1 (N.D. Ind., Jul. 18, 2016); *Joe Hand Promotions, Inc. v. L.A. Moon LLC*, No. 12-CV-446-WMC, 2013 WL 633572, at *1 (W.D. Wis. Feb. 20, 2013) (allowing recovery under Section 605 in the absence of evidence that defendant in default intercepted plaintiff's broadcast over satellite); *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999) ("Where a defendant is liable under both § 553 and § 605, a plaintiff is entitled to have damages awarded under 605 which provides greater recovery.") In the end, the Defendants' failure to show up to court to defend the lawsuit, which has prevented discovery on this issue, won't cause G & G to suffer any prejudice. *See J & J Sports Prods., Inc. v. Estrada*, No. 14 C 2518, 2014 WL 2609751, at *2 (N.D. Ill. June 11, 2014). In fact, G & G acknowledges in its motion for default judgment that it may only recover damages under one of these statutes. [DE 22 at 6.] I will base the Defendants' liability in default on Count I under Section 605, and dismiss Count II without prejudice.

Additionally, Aguirre and Valles are only liable in their individual capacity if they "had a right and ability to supervise" the violations and if they "had a direct

financial interest" in such activities. *See J & J Sports Prods., Inc. v. Ziggy's Bar & Grill, Inc.*, No. 15-11585, 2015 WL 7567505, at *4 (E.D. Mich. Nov. 25, 2015); *J & J Sports Prods., Inc. v. Ribeiro*, 562 F. Supp. 2d 498, 501 (S.D.N.Y. 2008). Aguirre and Valles are listed as officers of Taqueria Los Gallos, Inc. in Taqueria Los Gallos' liquor license. This is enough to plausibly suggest that, as officers of the entity that owns and/or operates Taqueria Los Gallos, Aguirre and Valles both had a right and ability to supervise the violations and had a direct financial interest in those violations. Thus, I find all the Defendants liable under Count I of complaint.

As for Count III, even if G & G sufficiently alleged conversion under Indiana law, any damages for conversion would just be duplicative of those under Sections 605 or 553 and should, therefore, be precluded. *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S.279, 297 (2002) ("[T]he courts can and should preclude double recovery." (quotation omitted)). Other courts confronting this exact situation have declined to award damages for conversion. *See J & J Sports Prods., Inc. v. McCausland*, No. 1:10-CV-01564-TWP, 2012 WL 113786, at *4 (S.D. Ind. Jan. 13, 2012); *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 491 (S.D.N.Y. 1999) ("[A]n award under [common law] claims would be duplicative of that under 47 U.S.C. § 605 [and] would violate the general principle that precludes double recovery." (quotation omitted)). In its complaint, G & G requests compensatory damages for conversion in addition to costs

and reasonable attorney's fees.[1] [DE 1 at 7.] As I will discuss below, an award of damages under Section 605 covers these bases, so a finding of liability on Count III is unnecessary.

**Damages**

While G & G can plead in the alternative, it can't simultaneously pursue relief under Sections 605 and 553 in this circumstance. *See J & J Sports Prods., Inc. v. McCausland*, No. 1:10-CV-01564-TWP, 2012 WL 113786, at *2 (S.D. Ind. Jan. 13, 2012). But as I mentioned before, no matter which federal statute prohibiting signal piracy applies in this case, the damages I will award to G & G comport with both statutes. Because the process for awarding damages is nearly identical under both statutes, *compare* 47 U.S.C. § 605(e) *with* 47 U.S.C. § 553(c), and because Section 605 allows for greater recovery, I will award G & G reasonable and just damages under Section 605. The statute permits a minimum of $1,000 to a maximum of $10,000 in statutory damages within the court's discretion. 47 U.S.C. § 605(e)(3)(C)(i)(II). It also allows for enhanced damages for willful violations under Section 605(e)(3)(C)(ii) and for costs and reasonable attorney's fees under Section 605(e)(3)(B)(iii).

In assessing statutory damages, courts in the Seventh Circuit diverge. Some courts calculate damages based on the plaintiff's "rate card," or what the plaintiff would have charged the defendant based on the establishment's occupancy capacity.

---

[1] G & G has not requested any damages for conversion in its Proposed Default Judgment. [DE 22-6.]

*See, e.g., J & J Sports Prods., Inc. v. Estrada*, No. 14 C 2518, 2014 WL 2609751, at *3 (N.D. Ill. June 11, 2014). Other courts award damages based on the number of patrons present during the violation multiplied by a set sum, typically when the plaintiff doesn't provide a rate card. *See, e.g.*, *That's Entertainment, Inc. v. Old Bridge Tavern*, No. 94 C 02612, 1996 WL 148045 (N.D. Ill. Mar. 28, 1996) (awarding $55 per patron where plaintiff didn't provide a rate card); *see also J & J Sports Prods., Inc. v. Homestyle Restaurant Group, LLC*, No. 13-CV-506, 2014 WL 4072132, at *3–4 (E.D. Wis. Aug. 15, 2014) (awarding $80 per patron to account for inflation since 1996 where plaintiff didn't provide rate card).

G & G provided the court with the affidavit of an investigator, Michael Anderson, that it hired to discover the Defendants' violation. [DE 22-1.] Anderson says that he entered Taqueria Los Gallos at 11:20 pm on September 15, 2012 and observed that Taqueria Los Gallos was displaying the program. [*Id.* at 1.] He was not charged a cover. [*Id.* at 2.] Anderson says that he counted approximately 70 patrons inside the establishment and noticed that there were 6 televisions or monitors for viewing by patrons and 5 were displaying the program. [*Id.* at 1, 3.] One of the televisions was a big screen in front of which there were approximately 40 chairs which appeared to be placed for viewing the program. [*Id.* at 3-4.] Anderson says that there were two promotional posters in the bar promoting the program. [*Id.* at 2.] G & G also provided its rate chart, which lists a price of $1,200 for establishments with minimum seating of 0-100. [DE 22-2 at 10.]

G & G requests damages in the amount of $42,687, representing $10,000 in

statutory damages, $30,000 in enhanced damages (statutory damages multiplied by a factor of three to reflect enhanced damages available under Sections 605 and 553), and $580 in costs and $2,107 in attorney's fees. [DE 22 at 10-11.] G & G requests $10,000 because it is the maximum statutory damages award under Section 605, but provides no reason at arriving at this number other than asserting that it is impossible to calculate the full extent of its lost profits and damages sustained by it. [DE 22 at 8.] Because G & G has provided its rate chart for the program and an affidavit approximating Taqueria Los Gallos' seating, I will award G & G statutory damages in the amount of $1,200.

Turning to consideration of enhanced damages, Section 605(e)(3)(C)(ii) allows me to increase the statutory damages "by an amount of not more than $100,000 for each violation" if I find that "the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." The Defendants, in failing to answer G & G's complaint, admitted to willfully intercepting the program for commercial advantage or private financial gain. [*See* DE 1 ¶12.] Furthermore, G & G also provided an affidavit from its President indicating that G & G's programming "cannot be mistakenly, innocently, or accidentally intercepted,"DE 22-2 at 3, in addition to the Anderson affidavit establishing that 70 patrons were present during the violation, DE 22-1 at 1. Based on the record, I find that the Defendants willfully committed the violation for the purpose of direct commercial advantage or private financial gain.

Awarding statutory damages according to G & G's rate chart without any enhancement would only compensate G & G for its subscription loss, "not fully

divest the defendants of any profits derived from unlawfully exhibiting the program." *Estrada*, 2014 WL 2609751, at *3. Courts consider a range of factors in setting enhanced damages, including: "(1) the number of violations; (2) defendant's unlawful monetary gains; (3) plaintiff's actual damages; (4) whether defendant advertised for the event; and (5) whether defendant collected a cover charge on the night of the event." *J & J Sports Prods., Inc. v. McCausland*, No. 1:10-CV-01564-TWP, 2012 WL 113786, at *4 (S.D. Ind. Jan. 13, 2012) (citing *Kingvision Pay-Per-View, Ltd. v. Rodriguez*, 2003 WL 548891, at *2 (S.D.N.Y. Feb. 25, 2003)). Courts also consider the proximity of the establishment to an urban area, the number of screens displaying the program, and "the deterrent effect of the award, with an eye toward imposing an award that is substantial enough to discourage future lawless conduct, but not so severe that it seriously impairs the viability of the defendant's business." *Id.*

While the Defendants didn't charge a cover on the night of the event, there is evidence that Defendants advertised the program and displayed the program on five screens and served approximately 70 patrons. I am most concerned with the need to send a strong deterrent signal. I will not reward the Defendants' failure to show up to court. Their failure to appear means that they gave up the opportunity to explain how an award of enhanced damages might impair the viability of their business. Thus I will triple the statutory damages. *See Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639 (1981) ("The very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct."). Tripling $1,200 results in a total of $3,600 in

9

enhanced damages.

G & G also requests costs and reasonable attorney's fees, to which it is entitled under 47 U.S.C. § 605(e)(3)(B)(iii). G & G has provided an affidavit from its attorney and supporting documentation that sets costs at $580 and attorney's fees at $2,107. [DE 22-4; DE 22-5.] After reviewing these materials, I find the costs and fees reasonable and will add them to the enhanced statutory damages of $3,600, resulting in a total award of $6,287.

## Conclusion

For the reasons above, all claims against Defendant Beatriz Zarate are **DISMISSED WITHOUT PREJUDICE**. In addition, Plaintiff G & G Closed Circuit Events, LLC's Renewed Motion for Default Judgment, DE 22, is **GRANTED**, and the clerk is directed to enter final judgment in favor of Plaintiff G & G Closed Circuit Events, LLC and against defendants Juan C. Aguirre, Graciela Valles, and Taqueria Los Gallos, Inc. jointly and severally in the amount of $6,287.

**SO ORDERED.**

**ENTERED:** June 8, 2017.

    _s/ Philip P. Simon_\
**PHILIP P. SIMON, JUDGE**\
**UNITED STATES DISTRICT COURT**